```
              IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF PENNSYLVANIA


JAMEEN WARREN,                        :   CIVIL ACTION
                                      :   NO. 14-552
         Petitioner,                  :
                                      :
    v.                                :
                                      :
STEVEN GLUNT, et al.,                 :
                                      :
         Respondents.                 :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                              April 16, 2015

Jameen Warren ("Petitioner") is a prisoner at State Correctional Institution — Houtzdale in Houtzdale, Pennsylvania. Petitioner filed a pro se application seeking relief through a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Habeas Petition"). Magistrate Judge Marilyn Heffley ("Judge Heffley") recommended denial of the Habeas Petition without an evidentiary hearing and with no certificate of appealability. Petitioner now objects. For the reasons that follow, the Court will deny Petitioner's Habeas Petition.

**I.   BACKGROUND**

The Court of Common Pleas of Delaware County offered the following summary of the relevant facts:

> Around 6:00 a.m. on September 14, 2003, Ann Flood ("Flood") entered the Darby Borough Laundromat ("laundromat") at 516 Main Street in Darby, Delaware County. The only other person in the Laundromat was John Reider ("Reider"), the elderly owner. Half an hour later, Warren entered the laundromat and asked Reider for change. Warren returned several times to get change from Reider. A short time later, Flood turned around and saw Reider on the floor and Warren standing over him demanding "give me your money, give me your money." Flood observed a gun in Warren's hand while he patted Reider down. Warren dragged Reider into Reider's office in the back of the laundromat and shot him in the leg when he claimed that he had no money. Mortally wounded, Reider admitted that money was in the drawer. Warren seized the money in the drawer and asked where the rest of the money was located. Reider responded that the money in the drawer was all he had to open the store.
> Warren asked Flood if she had any money, and she said she did not. Warren picked up Flood's pocketbook, threatening: "If I find out you're lying . . ." Warren ordered both Flood and Reider into the basement. Flood helped push Reider down the stairs, for he was unable to walk. While on the stairs, Flood observed Warren smoking something.
> At this point, George Robinson ("Robinson") entered the laundromat. While Robinson was putting his clothes into a washing machine, Warren walked up to him, thrust a chrome-plated gun in his back, and demanded his money and car keys. Robinson gave Warren about $220 in cash and told him that the keys were in his 1996 Ford Crown Victoria in front of the laundromat. Warren ordered Robinson downstairs. Robinson waited downstairs for about ten minutes and then came up to check whether Warren was there. Finding the laundromat empty, Robinson called police.
> Police and emergency medical technicians arrived several minutes later. Reider was rushed to the hospital, where he later died.

2

Commonwealth v. Warren, No. 5176-03, slip op. at 2-3 (Pa. Com. Pl. Aug. 15, 2006) [hereinafter Warren 2006] (footnote omitted) (citations omitted). After informing his girlfriend that he had robbed someone and taken a car, id. at 7, Petitioner was apprehended with crack cocaine on his person, id. at 6. He was read his Miranda rights, then gave a tape-recorded confession to the police. Id. at 7.

In September 2005, Petitioner was found guilty of second degree murder, three counts of robbery, robbery of a motor vehicle, and possession of a controlled substance. Report & Recommendation ("R&R") 1. He was sentenced to life in prison for second degree murder, an aggregate term (to be served consecutively) of 10 to 20 years for robbery, a concurrent term of 5 to 10 years for robbery of a motor vehicle, and a concurrent term of 16 to 32 months for possession of a controlled substance. R&R 1-2.

Petitioner appealed his conviction, arguing that the trial court should have suppressed his post-arrest statement to the police. The Pennsylvania Superior Court affirmed his conviction on July 3, 2007. R&R 3. Petitioner then pursued collateral attacks to his conviction under the Post Conviction Relief Act ("PCRA"). The PCRA court found his arguments meritless, and the Pennsylvania Superior Court agreed on May 10, 2013. Id. at 4.

On January 21, 2014, Petitioner filed his Habeas Petition, asserting four claims for habeas relief: (1) the police lacked probable cause to arrest him; (2) the trial court erred by denying his motion to suppress his inculpatory statements; (3) trial counsel was ineffective for failing to request a jury instruction concerning the lack of voluntary confession; and (4) trial counsel was ineffective for failing to employ an expert to testify about the effects of the crack cocaine Petitioner was allegedly on during police questioning. ECF No. 1. Respondents answered, arguing that all of Petitioner's claims are non-cognizable and/or meritless. ECF No. 8. Judge Heffley entered a Report and Recommendation on August 29, 2014 (ECF No. 9), and Petitioner filed objections (ECF Nos. 10, 11). The Habeas Petition is now ripe for disposition.

## II. LEGAL STANDARD

The Court may refer an application for a writ of habeas corpus to a U.S. Magistrate Judge for a report and recommendation. 28 U.S.C. § 636(b)(1)(B). A prisoner may object to the magistrate judge's report and recommendations within fourteen days after being served with a copy thereof. See § 636(b)(1); E.D. Pa. R. Civ. P. 72.1(IV)(b). The Court must then "make a de novo determination of those portions of the report or specified proposed findings or recommendations to

4

which objection is made." § 636(b)(1). The Court does not review general objections. See Brown v. Astrue, 649 F.3d 193, 195 (3d Cir. 2011) ("We have provided that § 636(b)(1) requires district courts to review such objections de novo unless the objection is not timely or not specific." (internal quotation marks omitted)). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." § 636(b)(1).

On habeas review, the Court must determine whether the state court's adjudication of the claims raised was (1) contrary to, or an unreasonable application of, clearly established federal law, or (2) based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. § 2254(d).

**III. DISCUSSION**

Judge Heffley recommends that each of Petitioner's claims for relief be denied as non-cognizable or meritless. Petitioner objects. Each claim is analyzed below.

A.   Claim One: Lack of Probable Cause

Petitioner claims that the police had no probable cause to arrest him, and states simply that the "[p]olice used triple hearsay to apprehend me without identification from

witnesses or [a] warrant." Habeas Pet. 5,[1] ECF No. 1. Respondents contend that this claim is non-cognizable because Fourth Amendment claims may not be revisited on federal habeas corpus review. Respondents are correct.

In Stone v. Powell, 428 U.S. 465 (1976), the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Id. at 494. This bar applies whether or not the claim is potentially meritorious, Deputy v. Taylor, 19 F.3d 1485, 1491 (3d Cir. 1994), and even where the state court erred in its resolution of the claim, Marshall v. Hendricks, 307 F.3d 36, 82 (3d Cir. 2002). The question, therefore, is whether Petitioner had the opportunity to fully and fairly litigate his claim that the police did not have probable cause to arrest him. Petitioner could demonstrate that he lacked this opportunity due to a structural defect preventing his claim from being heard. Id.

Petitioner has made no such argument – and indeed, he litigated this claim through a pretrial motion, Commonwealth v. Warren, No. 5176-03, slip op. at 12-14 (Pa. Com. Pl. Oct. 26,

---

[1] Citations to page numbers of the Habeas Petition refer to the page numbers imposed by ECF.

6

2004), and on direct appeal, Commonwealth v. Warren, No. 1027 EDA 2006, slip op. at 6-10 (Pa. Super. Ct. July 3, 2007) [hereinafter Warren 2007]. Both times, the state courts engaged in detailed factual and legal analyses and ultimately rejected Petitioner's probable cause argument. Petitioner's claim now is still on the merits – he alleges that the state courts decided the issue incorrectly, which is "insufficient to surmount the Stone bar." Marshall, 307 F.3d at 82. He points to no structural defects in the prior litigation of this issue.

Therefore, Petitioner had a full and fair opportunity to litigate the Fourth Amendment claim through which he now seeks habeas relief, and so this claim is non-cognizable.

B. Claim Two: Suppression of Inculpatory Statements

Next, Petitioner claims that the trial court erred by denying his pretrial motion to suppress inculpatory statements he gave to the police, because he was "under the influence of crack cocaine during questioning." Habeas Pet. 7.

The trial court rejected this argument, stating:

> Nor was Warren's statement involuntary because he smoked crack the previous evening. In Commonwealth v. Meachum, 711 A.2d 1029, 1034 (1998), the defendant claimed his confession was inadmissible because he was under the influence of heroin. The court properly denied his motion on the basis of testimony by the interrogating officer, a trained narcotics agent, that when the appellant was interviewed, he did not exhibit any signs of

7

>intoxication. See also Commonwealth v. O'Bryant, 479 Pa. 534, 540, 388 A.2d 1059, 1061 (1978) (ninety minutes before giving his statement, defendant had ingested a capsule of a prescription drug that made him drowsy, but this drug did not diminish defendant's ability to exercise volition). Here, Warren smoked crack the night before his arrest, but there was no evidence presented at the suppression hearing or at trial that he was still under the influence at the time of his post-arrest confession the following afternoon. Indeed, the relevant evidence, including but not limited to his audio taped statement, demonstrates that he was coherent and lucid at the time of his confession. Lieutenant Gibney testified that Warren was neither injured nor intoxicated when he reviewed and signed the waiver of his Miranda rights. Lieutenant Gibney added that despite the fact that Warren confessed that he had been smoking crack all night and that morning, in his opinion, Warren "wasn't under the influence of narcotics or he didn't know what he was doing. . . Crack cocaine lasts for a very short amount of time. . . [Warren] was sitting for over an hour before I talked to him. Not only that, if you know anything about drugs, the adrenaline that [Warren] has flowing from the crime, the upsetness, runs that high right out of him." Lieutenant Gibney's opinion, which is based on his extensive work for over fifteen years as a narcotics officer, is worthy of belief.

Warren 2006, slip op. at 22-23 (alterations in original).

The Pennsylvania Superior Court came to the same factual conclusion:

>Contrary to Warren's assertion, there is no evidence that he was under the influence of any illegal substance when he spoke with the police. While we accept as a fact that Warren smoked crack cocaine the night/early morning before the crime, we note that Warren was not taken into custody until the late morning/early afternoon of the day of the crime. He was not questioned by the police until the mid-afternoon and did not give his formal statement until late afternoon. There is no dispute that Warren did not smoke any crack while in police custody.

8

> At the suppression hearing, Lieutenant Gibney, the police officer who interviewed Warren, testified that Warren showed no signs of being under the influence of drugs. Warren presented no evidence at the suppression hearing that he was intoxicated.

Warren 2007, slip op. at 10-11.

In other words, the state courts determined, based on evidence in the record, that Petitioner was not in fact under the influence of crack cocaine when he gave inculpatory statements to the police. This Court is required to presume correct the factual determinations made by the state courts, since Petitioner has not "rebutt[ed] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). In fact, he has presented <u>no</u> evidence, aside from his own bare assertions, showing that the state courts made an unreasonable determination of the facts.

Nor did this determination contravene clearly established federal law, which requires a court to "consider the effect that the totality of the circumstances had upon the will of the defendant" in order to "determine the voluntariness of a confession." <u>Miller v. Fenton</u>, 796 F.2d 598, 604 (3d Cir. 1986). Petitioner claims that his statements were involuntary because he was under the influence of crack cocaine at the time. But the state courts found that as a matter of fact, he was not under the influence of crack cocaine during questioning. Therefore, while the trial court did consider the totality of the

9

circumstances, see Warren 2006, slip op. at 19, it simply determined that intoxication was not a factor exerting any influence upon Petitioner's will. As discussed above, this factual determination is presumed correct.

Accordingly, Petitioner's claim that the trial court should have suppressed his inculpatory statements because he was intoxicated provides no basis for habeas relief.

### C. Ineffective Assistance of Counsel Claims

A § 2254 petition can be based upon a violation of the Sixth Amendment right to effective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 686, 697 (1984). By claiming his counsel was ineffective, a defendant attacks "the fundamental fairness of the proceeding." Id. at 697. Therefore, as "fundamental fairness is the central concern of the writ of habeas corpus," "[t]he principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial." Id. Those principles require a convicted defendant to establish both that (1) his counsel's performance was deficient, and (2) the deficient performance prejudiced his defense. Id. at 687; Holland v. Horn, 519 F.3d 107, 120 (3d Cir. 2008).

To prove deficient performance, a petitioner must show that his "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. The court's "scrutiny of counsel's performance must be highly deferential." Id. at 689. Accordingly, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. In raising an ineffective assistance claim, the petitioner must first identify the acts or omissions alleged not to be the result of "reasonable professional judgment." Id. at 690. Next, the court must determine whether those acts or omissions fall outside of the "wide range of professionally competent assistance." Id.

To prove prejudice, a convicted defendant must affirmatively prove that the alleged attorney errors "actually had an adverse effect on the defense." Id. at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

1.  <u>Claim Three: Jury Instruction</u>

Petitioner claims that "trial counsel was ineffective for failing to request [a] jury instruction that the jury should've considered the lack of voluntary confession [sic]," because his confession was coerced. Habeas Pet. 9. Respondents argue that this claim was properly rejected by the state courts. Respondents are correct.

The Pennsylvania Superior Court addressed this claim on PCRA appeal, stating:

> The second issue raised . . . is whether trial counsel was ineffective for failing to request a jury instruction that the jury should have considered the lack of a voluntary confession by Appellant to police. We note that "[a]t trial, [Appellant] disavowed his confession, claiming he had been subject to a good cop/bad cop interrogation where the 'bad cop' physically abused" him.
>
> The PCRA court opined, "[E]ven if defense counsel failed to request instructions, [Appellant] suffered no prejudice because the [trial] Court gave nearly four . . . pages of instructions to the jury concerning how to gauge the voluntariness of his confession." We agree with this reasoning. In particular we note this statement:
>
>> [Y]ou may not consider this statement as evidence against [Appellant], unless you find that he made that statement voluntarily. This means that you must disregard the statement, unless you are satisfied by a preponderance of the evidence – and that means, unless you are satisfied that it is more likely than not that [Appellant] made the statement voluntarily. The word voluntary does have a special legal meaning[.]

12

> Because Appellant has failed to establish prejudice, we find no merit to his ineffectiveness claim.

Commonwealth v. Warren, No. 1981 EDA 2008, slip op. at 7-8 (Pa. Super. Ct. May 10, 2013) [hereinafter Warren 2013] (alterations in original) (footnote omitted) (citations omitted).

This analysis is not an unreasonable application of Strickland. Petitioner has not explained why the instructions his jury received on the issue of voluntariness were insufficient or incorrect.[2] Without such an explanation, he cannot show prejudice, because regardless of whether his lawyer requested a jury instruction as to voluntariness, the jury did receive several pages of such jury instructions. In other words, Petitioner has not demonstrated that a request from his counsel would have had any impact upon the instructions that the jury received. Moreover, he has not demonstrated a reasonable likelihood that even if the jury had received different instructions of some kind, the result of the proceeding would have been different – because as is, the jury might have "ignored the confession and convicted Warren on the basis of the eyewitness testimony, the statements attributed to Warren and testified to by his relatives, and the circumstantial and

---

[2] And indeed, the jury instructions appear to have used the totality of the circumstances test for voluntariness, R&R 13-14 – which, as discussed above, is the correct legal standard.

13

forensic evidence that linked Warren to the crime." Warren 2007, slip op. at 12-13 (footnote omitted) (citations omitted).

Therefore, the state courts' analyses of this claim were neither in contravention of clearly established federal law, nor based on unreasonable determinations of the facts in light of the evidence presented, and so Petitioner is not entitled to habeas relief on this claim.

### 2.  Claim Four: Expert Witness

Finally, Petitioner claims that trial counsel was ineffective for failing to use an expert to testify that Petitioner was indeed under the influence of crack cocaine when he gave his confession to the police. Like the previous ineffective assistance claim, this claim also fails for lack of prejudice.

The Superior Court rejected this claim, stating:

> Furthermore, we note that at trial, Appellant presented no evidence that he was under the influence of any drug at the time he made a statement to police. He did not testify at trial. In his relatively short direct examinations of his three witnesses, the sole testimony about his drug use came from his girlfriend's mother, who stated she was not aware that Appellant had a substance abuse problem, and that her daughter, Appellant's girlfriend, told her that Appellant smoked reefer. This testimony in no way establishes Appellant's intoxication at the time he was interrogated by police. Thus, we hold the underlying claim of Appellant's ineffectiveness issue is meritless; any expert opinion about his alleged drug intoxication at the time of his custodial

14

>     statement would not have been supported by the
>     evidence and would not have been relevant.

Warren 2013, slip op. at 9-10.

The Superior Court did not identify the basis for its conclusion that because there was no other evidence of Petitioner's intoxication, any expert testimony would have been irrelevant. This analysis is not necessarily correct. Petitioner may not have presented any evidence at trial of his intoxication during questioning, but he argues now that the expert's testimony <u>would have been</u> such evidence. The question whether an expert's testimony might have changed the result of the trial is not necessarily dependent upon whether it would have been the only evidence of its kind. After all, one piece of evidence – the testimony of a singular eyewitness to an event, for example – can be critical, regardless of how thoroughly it is or is not corroborated.

Regardless, Petitioner's claim still fails, because he has indeed not shown that under these circumstances, there is a reasonable likelihood the result of the trial would have been different had an expert testified that Petitioner was intoxicated while being questioned by police. As discussed above, Petitioner's confession was just one piece of evidence against him, and the jury may have in fact disregarded the confession and decided to convict him based on other evidence,

which was substantial. It is possible, certainly, that an expert might have persuaded the jury that Petitioner was under the influence of crack cocaine during questioning – but for the result of the trial to have changed, the jury would have had to set aside the testimony of eyewitnesses and victims to the underlying events, inculpatory statements Petitioner made to acquaintances of his before his arrest, inculpatory statements he made to the police before questioning began, and other evidence tying him to the crime. And, importantly, even if the jury had believed that Petitioner's confession was coerced, the confession would not then have become exculpatory evidence – it would simply no longer have been inculpatory (or <u>as</u> inculpatory), and thus would not have offset the remainder of the evidence against Petitioner. Moreover, even had an expert testified that Petitioner was indeed intoxicated while being questioned, the jury <u>still</u> might have concluded (under the totality of the circumstances test) that his confession was voluntary nonetheless. It is not reasonably likely, therefore, that the result of the proceeding would have been different had an expert testified that Petitioner was under the influence of crack cocaine while under police questioning.

    Accordingly, the state courts properly determined that Petitioner had failed to show prejudice for trial counsel's failure to employ an expert, and this claim does not provide a

basis for habeas relief.

**IV.  CERTIFICATE OF APPEALABILITY**

A petitioner seeking a certificate of appealability must demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). The Court will not issue a certificate of appealability because Petitioner has not made a substantial showing of the denial of his constitutional rights. See Slack v. McDaniel, 529 U.S. 473, 483-84 (2000).

**V.  CONCLUSION**

For the foregoing reasons, the Court finds that although Petitioner's allegations may rise to the level of extraordinary circumstances, he was not reasonably diligent in bringing his claims. Therefore, his Habeas Petition is not subject to equitable tolling and is barred as untimely. No evidentiary hearing is warranted, and the Court will not issue a certificate of appealability. An appropriate order follows.